589 So.2d 431 (1991)
Louise BLACKBURN, Appellant,
v.
STATE of Florida, COMMISSION ON ETHICS, Appellee.
No. 89-2776.
District Court of Appeal of Florida, First District.
November 15, 1991.
*432 Harold S. Richmond, Quincy, for appellant.
Floy Mikell Busby, Staff Atty., Florida Com'n on Ethics, Robert A. Butterworth, Atty. Gen., and Craig B. Willis, Asst. Atty. Gen., Tallahassee, for appellee.

REVISED OPINION
ZEHMER, Judge.
This is an appeal by Louise Blackburn from a final order entered by the Florida Commission on Ethics. The Commission found her guilty of violating section 112.313(6), Florida Statutes (1989), by corruptly using her official position as a county commissioner to secure a special benefit for herself, i.e., having an employee of Gadsden County compile information and write a short article in support of the county ordinance imposing mandatory garbage pickup and fees, which she used in her campaign for reelection as county commissioner. We hold that the evidence to prove appellant's corrupt intent is legally insufficient, and therefore reverse and remand with directions to dismiss the charge.
The facts found by the hearing officer in the recommended order were as follows. Appellant was a member of the Gadsden County Commission in 1988 when the Commission determined that the current system of garbage collection and disposal was inadequate because citizens were required to take their garbage to centrally located disposal sites, which had become eyesores, and many citizens were merely dumping garbage at unauthorized locations in the county. In response to this perceived need, the Commission adopted a county ordinance requiring each county resident to subscribe to and pay for mandatory garbage pickup. Appellant strongly supported and voted for this ordinance and was intensely interested in seeing that it be accepted by the citizens of Gadsden County. The ordinance met with considerable opposition, however, and it became the dominant political issue in appellant's campaign for reelection as county commissioner during the summer of 1988.
During that summer, appellant asked Mr. George LaCroix, the Director of Planning and Zoning for the County, to prepare a written article on the garbage ordinance. The request was made during his working hours, within the scope of his duties with the County, and he understood this to be an official request from a county commissioner. The article drafted by Mr. LaCroix had *433 blank spaces for specific information concerning certain county statistics, and appellant obtained this information at a later time from Mr. Bill Lee, the County Engineer. Ms. Carolyn Wise, another county employee, typed the article. As finally written, the article was a forceful statement in support of the garbage ordinance and its objectives. The information in the article was used by appellant in political speeches in support of the ordinance and in her candidacy for reelection, and she had it published as a paid political advertisement in a local newspaper. Mr. LaCroix, Mr. Lee, and Ms. Wise all testified that appellant received no special benefit or treatment in respect to the article, but this testimony was rejected by the hearing officer for lack of credibility.
A complaint against appellant, charging her with several violations of the ethics statutes in Part III of Chapter 112, Florida Statutes, was filed with the Ethics Commission by a political opponent. Only one charge survived the hearing, and it is the one involved on this appeal. The surviving charge essentially alleged that appellant's use of county employees to compile information and write the article supporting the garbage ordinance, which she used in her political speeches and in a political ad published in the local newspaper, constituted the misuse of appellant's office as a county commissioner in violation of section 112.313(6), Florida Statutes (1989).
In defense of the charge, appellant emphatically denied any corrupt or intentional wrongdoing. According to the findings in the hearing officer's recommended order, appellant contended at the hearing that "the document she asked LaCroix to prepare was merely to provide her with information which she could use, as a County Commissioner, to respond to questions about the garbage issue. She also appeared to contend that the article in the newspaper was an attempt to keep the public informed about a particular issue, rather than a campaign advertisement"; and that her request was similar to a request by a public official or member of the public who seeks information from a public agency about a matter of public concern, so that "she did not receive anything that any member of the public could not receive upon a similar request."
The hearing officer rejected these contentions, noting that, as published in the newspaper ad, the article "was persuasive rather than simply informational" and was clearly "an attempt to persuade the reader that the decision on the garbage issue was the correct decision." The hearing officer found that no member of the public could have had Mr. LaCroix prepare a similar article and rejected the notion that preparation of the article was part of his duties "in light of the fact that the article was used for [appellant's] private political campaign." Accordingly, the hearing officer concluded that Mr. LaCroix's preparation of the article for use in appellant's campaign "constituted a special benefit to her," that is, "This was a special benefit and involved using a County employee's time for a private political purpose." The hearing officer's recommended order drew a material distinction between the article and Mr. LaCroix having furnished information "concerning the amount of fees which had been collected under the ordinance, or the tons of garbage, or other such information to which Mr. LaCroix had access," and concluded that "the provision of such information would not have been a special benefit, and [appellant] would have been free to use it in her campaign, just as her opponent would have been free to use it in campaigning against her." The hearing officer further stated in his recommended conclusions of law:
8. It is noted that [appellant] might have requested a public employee to prepare a speech, or "talking paper" which she intended to use for speeches given within her official capacity as a County Commissioner. This was not the case with [appellant's] request of Mr. LaCroix, however, as the evidence establishes that [appellant] requested that he prepare the article specifically for her use in her private political campaign.
9. In that [appellant] asked a County employee to prepare an article which she intended to use for political speeches and *434 as a campaign advertisement, [appellant] acted in [a] manner which was inconsistent with her public duties. Her intent to use the article in her campaign was wrongful within the meaning of section 112.312(7), Florida Statutes [defining the term "corruptly."].
The Commission accepted the findings of fact and conclusions of law in the hearing officer's recommended order, found appellant guilty of the alleged violation, and recommended that a $250 civil penalty be imposed against appellant. This appeal ensued.
Section 112.313(6), Florida Statutes (1989), provides in pertinent part:
(6) MISUSE OF PUBLIC POSITION.  No public officer... shall corruptly use or attempt to use his official position ... or perform his official duties, to secure a special ... benefit ... for himself... .
The term "corruptly" is statutorily defined in section 112.312(7):
"Corruptly" means done with a wrongful intent and for the purpose of obtaining, or compensating or receiving compensation for, any benefit resulting from some act or omission of a public servant which is inconsistent with the proper performance of his public duties.
The hearing officer and the Ethics Commission have construed these statutory provisions to encompass obtaining the assistance of a county employee in compiling information and writing a speech or ad that eventually was used in a reelection campaign. They have reached this conclusion without citing to any specific provision by rule or statute other than section 112.313(6), or referring to any published opinion of any Florida court or the Ethics Commission itself, that would give fair and reasonable warning that appellant's obtaining the assistance of the county employee under the circumstances shown in this case would be unlawful or unethical. An essential element of the charged offense under section 112.313(6) is the statutory requirement that appellant acted with wrongful intent, that is, that she acted with reasonable notice that her conduct was inconsistent with the proper performance of her public duties and would be a violation of the law or the code of ethics in part III of chapter 112. We do not believe that section 112.313(6), standing alone, provided a legally sufficient basis for putting appellant on notice that she was committing an unethical practice under these circumstances. Indeed, the conduct in this case as found by the hearing officer does not fall within the stated legislative intent of the code of ethics in chapter 112.[1]
Part III of chapter 112, entitled "Code of Ethics for Public Officers and Employees," is comprised of sections 112.311 through 112.326. The legislative intent and declaration of policy set forth in section 112.311 states:
(1) It is essential to the proper conduct and operation of government that public officials be independent and impartial and that public office not be used for private gain other than the remuneration provided by law. The public interest, therefore, requires that the law protect against any conflict of interest and establish standards for the conduct of elected officials and government employees in situations where conflicts may exist.
(2) It is also essential that government attract those citizens best qualified to serve. Thus, the law against conflict of interest must be so designed as not to impede unreasonably or unnecessarily the recruitment and retention by government of those best qualified to serve. Public officials should not be denied the opportunity, available to all other citizens, to acquire and retain private economic interests except when conflicts with the responsibility of such officials to the public cannot be avoided.
(3) It is likewise essential that the people be free to seek redress of their grievances and express their opinions to all government officials on current issues *435 and past or pending legislative and executive actions at every level of government. In order to preserve and maintain the integrity of the governmental process, it is necessary that the identity, expenditures, and activities of those persons who regularly engage in efforts to persuade public officials to take specific actions, either by direct communication with such officials or by solicitation of others to engage in such efforts, be regularly disclosed to the people.
(4) It is the intent of this act to implement these objectives of protecting the integrity of government and of facilitating the recruitment and retention of qualified personnel by prescribing restrictions against conflicts of interest without creating unnecessary barriers to public service.
(5) It is hereby declared to be the policy of the state that no officer or employee of a state agency or of a county, city, or other political subdivision of the state, and no member of the Legislature or legislative employee, shall have any interest, financial or otherwise, direct or indirect; engage in any business transaction or professional activity; or incur any obligation of any nature which is in substantial conflict with the proper discharge of his duties in the public interest. To implement this policy and strengthen the faith and confidence of the people of the state in their government, there is enacted a code of ethics setting forth standards of conduct required of state, county, and city officers and employees, and of officers and employees of other political subdivisions of the state, in the performance of their official duties. It is the intent of the Legislature that this code shall serve not only as a guide for the official conduct of public servants in this state, but also as a basis for discipline of those who violate the provisions of this part.
(6) It is declared to be the policy of the state that public officers and employees, state and local, are agents of the people and hold their positions for the benefit of the public. They are bound to uphold the Constitution of the United States and the State Constitution and to perform efficiently and faithfully their duties under the laws of the federal, state, and local governments. Such officers and employees are bound to observe, in their official acts, the highest standards of ethics consistent with this code and the advisory opinions rendered with respect hereto regardless of personal considerations, recognizing that promoting the public interest and maintaining the respect of the people in their government must be of foremost concern.
It is quite apparent that the primary concern of these statements of legislative intent and purpose lies in avoiding conflicts of interest by public officials in matters under their charge, and eliminating private gain, directly or indirectly, by financial compensation or otherwise, in carrying out their official duties on behalf of the government they are sworn to serve. Section 112.311(5) specifically refers to the code of ethics enacted in this part to implement the policy and intent recited in the preceding subparagraphs (1) through (4), and the standards of conduct set forth in section 112.313 must be construed in the context of these provisions.
We find nothing in the language of these sections that suggests the incidental benefit appellant may have received or enjoyed in respect to her campaign for reelection by having a county employee draft the subject article was intended to be covered by this code of ethics. Both the hearing officer and the Ethics Commission agreed that it would have been appropriate for appellant to have obtained the information and written article in this case to use in her official capacity as County Commissioner apart from being used in the reelection campaign. Appellant insisted that the employee's work product was intended to be used and was in fact used for dual purposes: to inform the public as a county commissioner on an issue of vital importance to the county citizens, and to assist appellant in her reelection campaign. The first purpose is obviously a valid one, and the pertinent statutory language provides no basis for converting that valid purpose into an illegal *436 or unethical act simply because the information was also to be used in a political campaign. There is no evidence in the record, apart from appellant's having freely admitted use of the article in her campaign, that disputes or contradicts her testimony regarding her intent to use the material for both purposes. The record does not contain competent substantial evidence to support a finding of fact that appellant's only purpose in obtaining the article was to corruptly use her office to obtain a prohibited benefit for use in her campaign.
We also reach this conclusion because there is nothing inconsistent with appellant's duties as county commissioner in her soliciting public support for the garbage ordinance she felt so strongly was in the public interest, even though that occurred during the course of a political campaign. The statutory definition of "corruptly" in section 112.312(7) not only requires that the conduct complained of be done with a wrongful intent, it also requires that the "act or omission" be "inconsistent with the proper performance of [her] public duties." The statement of intent and policy in section 112.311(4) makes it clear that the ethics code is to be construed and applied so as to facilitate "the recruitment and retention of qualified personnel by prescribing restrictions against conflicts of interest without creating unnecessary barriers to public service." A county commissioner's use of information and written documents, otherwise ordinarily available from county employees for use as a commissioner, in a reelection campaign must be weighed against the obvious duty of the commissioner to communicate with the electorate concerning the performance of the commissioner's public duties, and to place such a rigid restriction on the commissioner as the hearing officer and Commission concluded to do in this case is contrary to the stated legislative intent and policy. It would be difficult, indeed, for this commissioner or anyone else to know when their use of county employees in the performance of their official duties would cross the line of prohibited conduct. If the code of ethics in section 112.313 is to cover the acts charged and proved against appellant in this case, the legislature must evidence that intent in more specific statutory enactments.
Having concluded that the record fails to contain competent substantial evidence to prove appellant acted in these matters with the requisite wrongful intent to violate any law or standard of ethics and that the conduct charged and proven against appellant under the circumstances of this case[2] is not within the proscriptions of section 112.313(6), we reverse the Commission's final order and remand with directions to dismiss the charge against appellant.
REVERSED AND REMANDED.
BOOTH and SMITH, JJ., concur.
NOTES
[1] Our holding in this case is limited to the particular circumstances shown and should not be read as a carte blanche authorization that incumbent candidates for political office can freely use public employees on public time to aid in their reelection campaigns.
[2] See note 1 on page 434.