871 So.2d 924 (2004)
Samuel G.S. BENNETT, Appellant,
v.
COMMISSION ON ETHICS, Appellee.
No. 5D03-1669.
District Court of Appeal of Florida, Fifth District.
March 19, 2004.
Rehearing Denied May 5, 2004.
C. Allen Watts and Ty Harris, of Cobb & Cole, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, and James H. Peterson, III, Assistant Attorney General, Tallahassee, for Appellee.
TORPY, J.
Samuel Bennett ("Appellant") challenges the determination by Appellee, Commission on Ethics ("the Commission") that he corruptly used his position as Chairman of the Council of the Town of Pierson, Florida, to obtain a special benefit in violation of section 112.313(6), Florida Statutes *925 (1999). Because we conclude that the evidence does not support a finding of corrupt intent by Appellant, we reverse.
At the center of this dispute is the allegation that Appellant made, or caused to be made, changes to the official zoning map of Pierson, Florida. The map had been created and adopted by the Pierson Town Council in 1994. Although it was an improvement over the Town's prior method of accounting for zoning designations, the map was inaccurate and not comprehensive. Moreover, the vellum-like document had become tattered and difficult to read. As a result, at the suggestion of Mr. Keeth, a land planner commissioned by the Town, the Pierson Town Council considered replacing the map with a computer-created digital map that would be more complete and easier to read, maintain, and update. Keeth told the council that, as a part of the process of creating a new map, individual council members and members of the public could suggest zoning changes. The suggested changes, if approved after appropriate public workshops and hearings, could then be incorporated into the final map. The council requested that Keeth work with Appellant in preparing a new map for consideration by the council.
In November of 1999, Keeth met with Appellant to discuss the map. Appellant retrieved the map from the Town Clerk so that he and Keeth could review it as an initial step for the project. The clerk was hesitant to release what was the only copy of the map to Appellant because she was responsible for it and Appellant, in her words, had a history of losing things. She testified that it was the "policy" to never permit the zoning map to leave the town hall and the clerk's supervision. Despite her reluctance, the clerk acknowledged that she ceded to the request of Appellant.
Thereafter, Keeth and Appellant spent time reviewing the map in Appellant's home. In addition, the two drove around Pierson to check for discrepancies between the actual zoning use of the land and the zoning classification identified on the map. During the drive, pencil notations were apparently made on the map. Although the evidence was in dispute as to the origin of the marks, the administrative law judge found that the marks had been made either by Appellant or by Keeth at Appellant's direction, for the purpose of indicating "suggested" zoning changes.
Keeth and Appellant returned to the town hall around lunch time and returned the map to the town clerk. The clerk did not examine the map at that time. However, she noted the pencil markings on the map later that afternoon when she retrieved the map to assist another individual. The pencil notations could clearly be distinguished from the official markings on the map and did not eviscerate the official marks in whole or in part. Apparently, these were not the only such marks on the map. A prior clerk testified that she too had at one time placed some marks on the map. Some of the suggested zoning changes made by Appellant, or at his behest, had they been approved, would have positively affected property owned by Appellant.
Subsequently, Keeth forwarded a draft map to Appellant that incorporated Appellant's suggested changes. A memorandum that accompanied the draft reflected that the proposed map included changes that had been suggested by Appellant. Throughout the following months Keeth prepared many drafts of the map, some of which included changes that were also suggested by citizens of the Town. Ultimately, after appropriate public hearings, a map was adopted, but none of the suggested zoning changes affecting Appellant's property were adopted. Throughout this process, Appellant's actions in having marked *926 the original map came under scrutiny, culminating in an investigation and the instant action.
The statutory provision at issue here is section 112.313(6), Florida Statutes, which provides, in pertinent part as follows:
Misuse of public position.No public officer, employee of an agency, or local government attorney shall [1] corruptly use or attempt to use his or her [2] official position or any property or resource which may be within his or her trust, or perform his or her official duties, [3] to secure a special privilege, benefit, or exemption for himself, herself, or others.
§ 112.313(6), Fla. Stat. (1999) (enumeration added).
Appellant contends that he did not act in the corrupt manner required under the statute and that the evidence does not support an attempt by him to procure a special benefit by his actions. The Commission argues that Appellant not only acted with a wrongful intent, but that such conduct was inconsistent with the proper performance of his official duties. This, the Commission asserts, meets the "corrupt" standard required under section 112.313(6), Florida Statutes. Furthermore, the Commission contends that had Appellant's changes been adopted, Appellant would have received a special benefit through an increase in the value of his property.
Turning first to the question of whether Appellant acted corruptly, we note that the legislature has defined "corruptly" as "done with a wrongful intent and for the purpose of obtaining, or compensating or receiving compensation for, any benefit resulting from some act or omission of a public servant which is inconsistent with the proper performance of his or her public duties." § 112.312(9), Fla. Stat. (1999). To satisfy this statutory element, proof must be adduced that Appellant acted "with reasonable notice that [his or] her conduct was inconsistent with the proper performance of [his or] her public duties and would be a violation of the law or the code of ethics." Blackburn v. State, Comm'n on Ethics, 589 So.2d 431, 434 (Fla. 1st DCA 1991).
Here, the factual findings of the administrative law judge, which were adopted by the Commission, contradict the conclusion that Appellant acted corruptly. After having been invited by Keeth to make suggested changes to the map, Appellant did just that. Appellant's purpose in marking the map, therefore, was to "suggest" that the zoning be changed, which belies the Commission's conclusion that Appellant's acts were corrupt. The Commission readily acknowledges that an elected member of a Town Council may suggest that zoning be changed on property owned by the member provided that disclosure and recusal from voting occurs, but no allegation is made here that Appellant voted on these suggestions or failed to disclose his interest in the parcels. Furthermore, the Commission points to no law that prohibited Appellant from possessing or marking the map. The conclusion that Appellant acted corruptly under these facts, therefore, is erroneous.[1]
Based on our conclusion that the corruption element was not satisfied, Appellant's other arguments are not considered.
REVERSED.
*927 PLEUS, J., concurs.
GRIFFIN, J., dissents without opinion.
NOTES
[1] Certainly, had Appellant secretly altered the map with the intent to effect a zoning change without proper public hearing, a different case would be made, but the evidence here fails to support any such scenario.