FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA
_____

No. 1D17-2187
_____

ROBERT K. ROBINSON,

　　Appellant,

　　v.

COMMISSION ON ETHICS,

　　Appellee.

_____

On appeal from the Commission on Ethics.

March 29, 2018

WETHERELL, J.

Robert K. Robinson appeals the final order and public report in which the Commission on Ethics recommended a $10,000 civil penalty and a public censure and reprimand for ethical violations committed by Robinson while he was serving as a contracted city attorney. We affirm the portion of the order finding that Robinson violated section 112.313(6), Florida Statutes (2014), because competent substantial evidence supports that finding, but we reverse the portion of the order finding that Robinson violated section 112.313(16)(c) because the Commission misconstrued that statute. We remand the case to the Commission for reconsideration of the penalty.

I

Robinson served for more than 13 years as the city attorney for the City of North Port pursuant to lucrative contracts between

the City and Robinson's law firms. The 2012-14 contract, for example, provided a monthly retainer of $28,333 (which equates to $340,000 per year) plus travel and other expenses.

Robinson's arrangement as the contracted city attorney ended in mid-September 2014 when the City hired an in-house city attorney. A couple of months before his contract as city attorney was scheduled to end, Robinson drafted and presented ordinances to the city commission to create the positions of Zoning Hearing Officer and Code Enforcement Special Magistrate. Robinson then successfully persuaded the city commission to appoint him to these positions without considering anyone else because, as he told the city commission, he was "uniquely qualified" for the positions and the appointments had to be made immediately.

These appointments formed the basis of a complaint filed with the Commission by a city resident. Commission staff investigated the complaint, and based on the investigation, the Commission found probable cause to believe that Robinson violated section 112.313(3), (6), (7), and (16) by "providing counsel and recommendations to the City Commission regarding the adoption of [the ordinance] requiring the appointment of a Zoning Hearing Officer and encouraging the City Commission to amend . . . the City Code to replace the Code Enforcement Board with a Code Enforcement Special Magistrate and offering himself for consideration for the position of Zoning Hearing Officer as well as Special Magistrate."

Based on the finding of probable cause,[1] the Commission referred the case to the Division of Administrative Hearings to

---

[1] The concurring in part/dissenting in part opinion suggests that the vote on the finding of probable cause was "closely-divided." But, even if that is true, it does not matter because all that was needed for the Commission to find probable cause was a majority vote. Thus, whether the vote was "five-four," unanimous, or something in between, the result is the same. Moreover, in this case, any significance attributable to the vote-count at the probable cause stage is eviscerated by the

2

appoint an administrative law judge (ALJ) to conduct a "public hearing." *See* § 112.324(3), Fla. Stat.; Fla. Admin. Code R. 34-5.010. After a two-day hearing, the ALJ issued a detailed recommended order finding that Robinson did not violate section 112.313(3) or (7) but that he did violate section 112.313(6) and (16)(c). With respect to section 112.313(6), the ALJ explained:

> Based upon his years of service to the City and based upon the fact that [Robinson] generally had the majority of the Commissioners on his side when he made recommendations for action to be taken, [Robinson]'s recommendations with respect to the City Commission hiring him as both the Zoning Hearing Officer and the Special Magistrate put him in an advantageous position with respect to securing those two contracts. . . . By proceeding with the ordinances at the meetings while he was still under contract as the City Attorney, [Robinson] left the clear impression that he had a personal pecuniary interest in the outcome of the vote on the two ordinances. By offering his services at the 11th hour as the best qualified candidate for the Zoning Hearing Officer position, the obvious conclusion an outsider to the process would make is that [Robinson] created an unfair advantage for himself and his firm.

And, with respect to section 112.313(16)(c), the ALJ explained:

> When [Robinson] continued to represent the City regarding the two ordinances that created new positions with the City, he violated section 112.313(16)(c), because the position he sought was for a "private individual or entity" since both [Robinson] and [his law firm] no longer would be either the City Attorney or the local government attorney . . . when their contract expired. He was thus acting on behalf of a private individual or entity since the positions he sought to assume after

---

Commission's *unanimous* vote on the final order and public report that occurred after the facts were fully developed.

3

adoption of the ordinances were for him or his firm once they became private citizens as to the City . . . .

Based on these violations, the ALJ recommended a $10,000 civil penalty—$5,000 for each violation.

Robinson filed exceptions to the recommended order in which he argued, among other things, that (1) the Commission failed to prove that he violated section 112.313(6) because the ALJ did not expressly find, and the evidence did not establish, that he acted "corruptly," and (2) the Commission failed to prove that he violated section 112.313(16)(c) because other provisions of subsection (16) expressly authorized him to refer business to his law firm. The Commission—with no noted dissent[2]—rejected Robinson's exceptions and adopted the ALJ's findings that Robinson violated section 112.313(6) and (16)(c), and based on these violations, the Commission recommended that the Governor[3] impose a $10,000 civil penalty and also publicly censure and reprimand Robinson.

---

[2] Commissioner Anchors—the "skeptical Ethics Commissioner" referred to in the concurring in part/dissenting in part opinion—commented prior to the vote that she shared some of the concerns raised in Robinson's exceptions, but she nevertheless joined the vote to adopt the recommended order because she correctly recognized that the Commission could not overturn the ALJ's findings under the applicable standard of review. She explained:

> I don't think I can overcome the standard that we have to be able to deviate from the administrative law judge's findings.
>
> If I were an administrative law judge, I might have had a different observation, but I think that they were well articulated and well reasoned. They caused me some pause, but I don't think I can meet the standard.

[3] Where, as here, the Commission finds that a violation of part III of chapter 112 has occurred, its "duty" is to "report its findings and recommend appropriate action to the proper

4

This timely appeal followed.

II

We have jurisdiction to review the Commission's final order and public report even though it merely *recommends* the imposition of a penalty. *See* § 112.3241, Fla. Stat. ("Any final action by the commission taken pursuant to [part III of chapter 112] shall be subject to judicial review in a district court of appeal upon the petition of the party against whom the adverse opinion, finding, or recommendation is made."); *cf. Rivera v. Comm'n on Ethics*, 195 So. 3d 1177 (Fla. 1st DCA 2016) (holding that the appellant's constitutional challenge to the statute authorizing the House Speaker to impose the penalties recommended by the Commission was not yet ripe for judicial review, but reviewing— and summarily rejecting—the appellant's argument that his due process rights were violated in the proceedings that culminated in the Commission's final order and public report).

Our review of the Commission's final order and public report is governed by the standards in section 120.68: the factual findings are reviewed for competent substantial evidence, *see* § 120.68(7)(b), Fla. Stat.; *Blackburn v. Comm'n on Ethics*, 589 So. 2d 431, 436 (Fla. 1st DCA 1991); the legal conclusions are reviewed *de novo*, *see* § 120.68(7)(d), Fla. Stat.; *Brown v. Comm'n on Ethics*, 969 So. 2d 553, 556 (Fla. 1st DCA 2007); and the recommended penalty is reviewed for an abuse of discretion, *see* § 120.68(7)(e), Fla. Stat.; *Criminal Justice Standards & Training Comm'n v. Bradley*, 596 So. 2d 661, 664 (Fla. 1992). And, pursuant to section 120.68(8), the order must be affirmed "[u]nless the court finds a ground for setting aside, modifying, remanding, or ordering agency action or ancillary relief under a specified provision of [section 120.68]."

---

disciplinary official." § 112.324(8), Fla. Stat. The disciplinary official—in this case, the Governor, *see* § 112.324(8)(d), Fla. Stat.—is then responsible for imposing the penalty.

## A

In his first issue on appeal, Robinson contends that the Commission erred in finding that he violated section 112.313(6) because the evidence does not establish that he acted "corruptly" as required by the statute. We disagree.

Section 112.313(6) provides in pertinent part:

> No public officer, employee of an agency, or local government attorney shall *corruptly* use or attempt to use his or her official position . . . to secure a special privilege, benefit, or exemption for himself, herself, or others.

(Emphasis added.) The term "corruptly" is defined to mean "done with a wrongful intent and for the purpose of obtaining . . . any benefit . . . which is inconsistent with the proper performance of [the respondent's] public duties." § 112.312(9), Fla. Stat.; *see also Siplin v. Comm'n on Ethics*, 59 So. 3d 150 (Fla. 5th DCA 2011); *Bennett v. Comm'n on Ethics*, 871 So. 2d 924, 926 (Fla. 5th DCA 2004). Case law has construed this provision to require proof that the respondent acted "with reasonable notice that [his or] her conduct was inconsistent with the proper performance of [his or] her public duties and would be a violation of law or the code of ethics." *Siplin*, 59 So. 3d at 151-52 (quoting *Blackburn*, 589 So. 2d at 434).

Competent, substantial evidence supports the ALJ's implicit finding that Robinson acted corruptly.[4] Specifically, the ALJ found, and the record supports, that Robinson held a position of great influence with the city commission as the long-serving city attorney and that around the same time he lost his long-time

---

[4] We summarily reject Robinson's argument that the ALJ's failure to make an *explicit* finding that he acted "corruptly" compels reversal because, as the Commission explained in the final order and public report, that finding is implicit from the other findings in the recommended order and the ALJ's determination that Robinson violated section 112.313(6).

6

position as city attorney, he persuaded the city commission to create and appoint him to the new positions of Zoning Hearing Officer and Code Enforcement Special Magistrate. Robinson did not merely suggest that he should be considered for the two positions, but rather he wielded substantial influence over the drafting of the ordinances creating the positions; he advised on the qualifications necessary for each position; and he then offered his services as the best qualified person without providing any option other than to appoint him immediately. *Cf. Bennett*, 871 So. 2d at 926 (determining that town council chairman did not act corruptly by marking-up the town's revised zoning map in a way that would benefit his properties because the mark-ups were merely "suggestions" that the chairman was invited to make by the town's land planning consultant). In short, the evidence establishes that Robinson misused his position as city attorney to create an unfair advantage for himself and gain a personal benefit.

The evidence further establishes that Robinson knew or should have known that advising the city commission as city attorney on a matter benefiting himself personally was inconsistent with his public duties as city attorney because on prior occasions involving similar circumstances he advised the city commission to hire outside counsel. For example, in 2012, when Robinson intended to bid on the city attorney contract, he recommended that the city commission hire outside counsel on the matter because any advice from him would be a conflict of interest. Accordingly, in this case, Robinson's failure to advise the city commission to hire outside counsel when creating and establishing the qualifications for the Zoning Hearing Officer and Code Enforcement Special Magistrate positions—coupled with his creating a sense of urgency in the appointments and giving the city commissioners no other options—establishes that Robinson knew or should have known that his actions were wrong and unethical.

As can be seen from the characterization of the facts in the concurring in part/dissenting in part opinion, the ALJ in this case was presented with conflicting narratives about Robinson's eleventh-hour effort to obtain the Zoning Hearing Officer and Code Enforcement Special Magistrate positions. Was it simply a

magnanimous gesture of a long-time and faithful public servant motivated by the best of intentions, as Robinson contended? Or, was it a "corrupt" act motivated by Robinson's pecuniary self-interest in preserving a portion of the income stream from the City that he had enjoyed for the past 13 years, as the Commission contended? It was the ALJ's prerogative—as the fact-finder charged with weighing and balancing the direct and circumstantial evidence—to reject Robinson's narrative and view the evidence consistent with the narrative advocated by the Commission. We do not have the authority to second-guess the ALJ's view of the facts where, as here, there is competent substantial evidence to support that view. *See* § 120.68(7)(b), Fla. Stat. (stating that "the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact").

In sum, because competent substantial evidence supports the Commission's finding that Robinson violated section 112.313(6), we affirm that finding.

B

In his second issue on appeal, Robinson contends that the Commission erred in finding that he violated section 112.313(16)(c) because the Commission misconstrued that statute. We agree.

Section 112.313(16)(c) provides:

No local government attorney or law firm in which the local government attorney is a member, partner, or employee shall *represent* a private individual or entity before the unit of local government to which the local government attorney provides legal services. A local government attorney whose contract with the unit of local government does not include provisions that authorize or mandate the use of the law firm of the local government attorney to complete legal services for the unit of local government shall not recommend or otherwise refer legal work to that attorney's law firm to be completed for the unit of local government.

8

(Emphasis added.)

The plain language of this statute prohibits two distinct actions. The first sentence relates to dual-representation and prohibits a local government attorney from representing a person or entity before the local government for which the attorney provides legal services. The second sentence relates to the referral of additional legal work and prohibits a local government attorney from referring legal work to his firm unless the attorney's contract with the local government authorizes or mandates that the firm be used to complete the local government's legal work.

Here, Robinson was found to have violated the first sentence of section 112.313(16)(c). The operative word in that sentence is "represent," which is defined to mean "actual physical attendance *on behalf of a client* in an agency proceeding . . . ." § 112.312(22), Fla. Stat. (emphasis added). The word "client" is not statutorily defined, but according to the dictionary,[5] the word means "a person who engages the professional advice or services of *another*." *Client*, MERRIAM-WEBSTER DICTIONARY, *https://www.merriam-webster.com/dictionary/ client* (emphasis added); *see also Client*, BLACK'S LAW DICTIONARY (6th Ed. 1990) (defining "client" as "[a]n individual, corporation, trust, or estate that employs a professional to advise or assist it in the professional's line of work").

The ALJ found that Robinson was representing himself or his law firm when he persuaded the city commission to appoint him as Zoning Hearing Officer and Code Enforcement Special Magistrate. That finding is supported by competent substantial evidence, so the resolution of the second issue on appeal boils down to whether Robinson was representing a "client" when he was representing himself or his law firm before the city commission.

---

[5] It is appropriate to refer to dictionary definitions to ascertain the plain and ordinary meaning of terms that are not statutorily defined. *See Sch. Bd. of Palm Beach Cty. v. Survivors Charter Schools, Inc.*, 3 So. 3d 1220, 1223 (Fla. 2009).

We are not persuaded that the term "client" should be broadly construed to include Robinson's representation of himself or his law firm before the city commission under the circumstances of this case.

First, this broad interpretation is inconsistent with the longstanding interpretation of the statute reflected in the Commission's advisory opinions issued pursuant to section 112.322(3). In Opinion 17-18, for example, the Commission opined that section 112.313(16)(c) prohibited the contracted attorney for a local value adjustment board from representing "another person or entity" before the board, but that it did not prohibit the attorney from representing "[his] own interests as a property owner" before the board. Op. Comm'n on Ethics 17-18 (Dec. 13, 2017) (available at *http://www.ethics.state.fl.us/ Documents/Opinions/17/CEO%2017-018.htm*). This opinion relied on advisory opinions from 1978 and 1993 and explained that "it is axiomatic pursuant to opinions of this Commission that no public officer, employee, or local government attorney is prohibited from appearing before any board in an individual capacity as a private citizen, representing solely his or her own interests." *Id.* (citing advisory opinions 78-79 and 93-36).

Second, this broad interpretation would result in the first sentence of section 112.313(16)(c) prohibiting conduct that is expressly authorized by the second sentence of the statute. Specifically, if the first sentence of the statute were construed to preclude a local government attorney from representing himself or his firm when seeking additional legal work from the local government, then the second sentence of the statute—which permits the attorney to refer legal work to his firm so long as the contract with the local government allows him to do so—would be a nullity.

We have a duty to construe statutes in a manner that gives effect to all of their provisions. *See Edwards v. Thomas*, 229 So. 3d 277, 284 (Fla. 2017) ("[R]elated statutory provision must be read together to achieve a consistent whole, and . . . '[w]here possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another'" (quoting *Quarantello v. Leroy*, 977 So. 2d 648, 651-52

10

(Fla. 5th DCA 2008))). Accordingly, we reject the ALJ's broad interpretation of section 112.313(16)(c) in this case, and consistent with the longstanding interpretation adopted by the Commission in its advisory opinions,[6] we narrowly construe this statute to only preclude the local government attorney from representing a person or entity *other than himself* before the unit of government to which the attorney provides legal services.

This does not mean that there are no ethical limitations on a local government attorney's referral of legal work to himself or his law firm. Indeed, the second sentence of section 112.313(16)(c) prohibits such referrals unless they are authorized or mandated by the attorney's contract with the local government, and section 112.313(16)(b) provides that the "the standards of conduct in subsections (2), (4), (5), (6), and (8) [of section 112.313] shall apply to any person who serves as a local government attorney." Accordingly, as happened in this case, a local government attorney who is found to have misused his position by "corruptly" obtaining legal work or other special benefits or privileges for himself or his firm can be found guilty of violating section 112.313(6).

In sum, because the Commission misconstrued section 112.313(16)(c), we reverse the Commission's determination that Robinson violated that statute.

C

In his final issue on appeal, Robinson contends that the Commission abused its discretion by increasing the recommended penalty to include a public censure and reprimand. We need not resolve this issue because the Commission will need to reconsider the recommended penalty based on our reversal of the portion of the final order and public report finding that Robinson violated section 112.313(16)(c). *See Green v. Dep't of Bus. & Prof. Reg.,* 49

---

[6] The Commission's advisory opinions are not binding on the courts, but they are persuasive and entitled to due consideration. *See State v. Family Bank of Hallandale,* 623 So. 2d 474, 478 (Fla. 1993) (explaining that opinions of the Attorney General are not binding on the courts, but they are persuasive).

11

So. 3d 315, 319 (Fla. 1st DCA 2010) (reversing and remanding for reconsideration of penalty based on reversal of several violations on which the penalty was based). If, on remand, the Commission decides again to increase the recommended penalty, it must "stat[e] with particularity its reasons therefor in the order, by citing to the record in justifying the action." § 120.57(1)(*l*), Fla. Stat.

## III

In sum, for the reasons stated above, we affirm the Commission's finding that Robinson violated section 112.313(6), but reverse its finding that he violated section 112.313(16)(c). We remand the case to the Commission for reconsideration of the penalty.

AFFIRMED in part; REVERSED and REMANDED in part.

KELSEY, J., concurs. MAKAR, J., concurs in part and dissents in part with opinion.

––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––

MAKAR, J., concurring in part, dissenting in part.

"No good deed goes unpunished" best describes this case, one in which a trusted and well-respected attorney, who provided "exemplary legal services" as city attorney to a rapidly-growing Southwest Florida municipality for over a decade, is absolved of every public ethics charge leveled against him but one: a claim that he acted "corruptly" in a series of public meetings by convincing the city commission to hire him on a limited, terminable-at-will basis after his successor's arrival. That charge, like the other three inter-related ones brought against him, should be invalidated.

12

Robert K. Robinson, as he transitioned from his long-held position of outside city attorney for the City of North Port, Florida, did two things relevant to this case. First, he and his law firm—who had provided legal services to the City for almost fourteen years under a broadly-written, full-service agreement—made themselves available to the City during the two-week gap before the arrival of the City's new in-house city attorney. At the vice-mayor's direction, Robinson prepared a letter of engagement for the City's consideration that was ultimately approved by the commission in public meetings.

Second, Robinson drafted ordinances creating a zoning hearing officer and a code-enforcement special magistrate, both to be contractually-awarded to outside legal counsel on a terminable-at-will, hourly basis. The need for these positions had been discussed previously, and they were supported by members of the City's governance. After public meetings on the proposed ordinances, they passed by a four-one vote and, concurrently, Robinson was hired for the positions, one of which had urgency because a pending zoning matter required immediate attention (the zoning board lacked sufficient members to take action and a lawsuit had been threatened). Not long thereafter, Robinson and his partners joined another private law firm, necessitating that he resign from the hearing officer position in which he served for just two weeks, resolving the pending zoning matter and one other.

That didn't close the chapter; instead, a new Kafkaesque one emerged. An ethics complaint was filed against Robinson, which was deemed legally sufficient to support an investigation, resulting in a report upon which the Commission by a closely-divided (five-four) vote found probable cause existed to believe that Robinson committed four state ethics violations. Each of the alleged violations arose from the identical conduct: Robinson "providing counsel and recommendations to the City Commission" as to the hearing officer ordinance and "encouraging" the City Commission to replace its code enforcement board with a special magistrate.

After much discovery and pre-hearing matters, a two-day evidentiary hearing was held and the administrative law judge's

13

recommended order concluded that two violations were proven and two were not:

- Robinson *did not* violate Florida Statutes section 112.313(3) (2014)—which prohibits ***doing business with one's own agency***—because section 112.313(16) lawfully permitted him to do so as to the hearing officer/magistrate positions.

- Robinson *did not* violate section 112.313(7)(a)—which prohibits ***conflicting employment and contractual relationships***—because, although he and his law firm had "an inherent conflict" in concurrently representing the City and "drafting or signing off on requirements for the two new" hearing officer/magistrate positions, they were permitted to do so by statute such that they could: a) provide "all nature of legal services to the City" under section 112.313(16)(b); and b) were "specifically permitted" to "have an employment or contractual relationship with his law firm that would potentially create a continuing or frequently recurring conflict between his private interests and the performance of his public duties or that would impede the full and faithful discharge of his public duties."

- Robinson violated section 112.313(16)(c)—which prohibits a local government attorney from "*represent[ing]*" *a private individual or entity before the local government* that employs him—because he was representing himself and his firm who would both "bec[ome] private citizens as to the City" after their legal services contract came to an end.

- Robinson violated section 112.313(6)—which prohibits *misuse of public position*—because he

14

should have recommended, but didn't, that the City Commission hire outside counsel to handle the hearing officer/magistrate discussions and negotiations.

The Commission's Final Report unanimously upheld the two violations and this appeal ensued.

I agree that Robinson did not violate section 112.313(16)(c) because his actions—assisting the City by offering interim legal and hearing officer/magistrate services—did not amount to representation of a "client" before the City under the circumstances of this case. *See* § 112.312(22), Fla. Stat. (2014). Neither Robinson nor his firm were representing a "client," which the definitional statute requires, such that the section 112.313(16)(c) violation must be vacated.

But I fail to see how Robinson can be said to have acted "corruptly" in violation of section 112.313(6) as to the hearing officer/magistrate positions under the circumstances presented. As next discussed, (a) he and his law firm were exempt from ethics laws related to "doing business" and having "conflicting employment/contractual relationships" with the City, (b) he did nothing inconsistent with the proper performance of his public duties, and (c) his actions were not done with "corrupt" intent.

First off, Robinson and his firm were exempt from ethics laws against "doing business" and having "conflicting employment/contractual relationships." Robinson was the outside city attorney at the time the hearing officer/magistrate positions were first discussed, and later proposed and approved. By law, both Robinson and his law firm were statutorily exempt from the prohibition on "doing business with one's agency," § 112.313(3), Fla. Stat., and had statutory authority to provide comprehensive legal services and have an employment relationship with the City that conflicted with "his private interests and the performance of his public duties" (or impeded the latter). Section 112.313, subsection (16)(b) states:

(b) *It shall not constitute a violation of subsection (3) [doing business with agency] or subsection (7)*

15

*[conflicting employment or contractual relationship]* for a unit of local government to contract with a law firm, operating as either a partnership or a professional association, or in any combination thereof, or with a local government attorney who is a member of or is otherwise associated with the law firm, *to provide any or all legal services to the unit of local government*, so long as the local government attorney is not a full-time employee or member of the governing body of the unit of local government.

(Emphasis added). The italicized portion says that a local government lawyer (like Robinson) and his law firm have broad authority to provide "any or all legal services" to a local government without fear of an ethics violation for "doing business with one's agency" or having a "conflicting employment and contractual relationship" so long as "the local government attorney is not a full-time employee or member of the governing body of the unit of local government." *Id.* Robinson did not meet this latter description, thereby authorizing him and his law firm to do what they had done for over thirteen years: to make themselves fully available for any and all legal services the City might deem appropriate. This would include the "gap-filling" services Robinson and his law firm provided as well as the limited terminable-at-will services at issue. Nothing in the statutory language gave notice that either of these contracts was other than lawful.

Second, and on a similar note, Robinson did not act "corruptly" under section 112.313(6) because he didn't misuse his position by acting inconsistent with his public duties nor did he act with wrongful intent. Local government attorneys—though shielded from "doing business" and having "conflicting employment/contractual relationships" with their agencies—are subject to the standards of conduct in section 112.313(6), which says that no public official **"**shall corruptly use or attempt to use his or her official position or any property or resource which may be within his or her trust, or perform his or her official duties, to secure a special privilege, benefit, or exemption for himself, herself, or others." § 112.313(6), Fla. Stat. The word "corruptly" is defined to mean "done with a *wrongful intent* and for the

16

purpose of obtaining, or compensating or receiving compensation for, any benefit resulting from some *act or omission* of a public servant *which is inconsistent with the proper performance of his or her public duties.*" § 112.312(9), Fla. Stat. (emphasis added). As next discussed, the highlighted portions were not met as to Robinson for a number of inter-related reasons.

Taking the latter language first, nothing establishes that Robinson acted inconsistent with the proper performance of his public duties in violation of law. No municipal code or state procurement law is alleged to have been violated; and no claim is made that the Commission was prohibited by law from contracting with Robinson directly for his services. Nor is Robinson's drafting of the ordinances as the City's attorney alleged to be impermissible under the municipal code; indeed, he fully assisted in the transition in a positive and constructive way. And, as just discussed, section 112.313(16)(b) gave the City much leeway in its procurement of "any or all" of Robinson's legal services.

What's left is the narrow claim that Robinson *was required* to suggest that the City hire and pay outside legal counsel to oversee and handle procurement of the hearing officer/magistrate positions to avoid a potential appearance of a conflict of interest because he had suggested such an arrangement when his firm expected to bid for the comprehensive, full-service legal services contract in 2012. At his suggestion, outside counsel was brought in, a competitive bid process was used, and Robinson's firm won the full-service contract in 2012. By failing to suggest the same type of arrangement for the procurement of the far more limited hearing officer/magistrate positions, Robinson is thereby deemed "corrupt" and acting inconsistent with public duties.

But that stretches the facts and law way too far. The factual findings, at best, establish that the situation *could* have been— not *must* have been—handled differently, making it important for someone in Robinson's position to have reason to be on notice that his conduct would be deemed "corrupt" and unlawful. On this point, our Court said long ago that the requirement of "corrupt" intent under subsection (6) includes a "reasonable notice" component:

17

the statutory requirement that appellant acted with wrongful intent, that is, that she acted with *reasonable notice* that her conduct was *inconsistent with the proper performance of her public duties **and** would be a violation of the law or the code of ethics* in part III of chapter 112.

*Blackburn v. State, Comm'n on Ethics*, 589 So. 2d 431, 434 (Fla. 1st DCA 1991) (emphasis added). But no factual findings nor legal authority establishes that an attorney in Robinson's position would be on notice that offering his services on such a limited basis was "inconsistent with the proper performance" of his public duties *and* a violation of state ethics laws under the specific facts presented. To the contrary, offering his legal services was *consistent* with the City's lawful procurement of "any and all" legal services from both him and his law firm; and it was lawful, and not an ethics violation, under the broad legal services contract that was in place. § 112.313(16)(b) & (c), Fla. Stat. And the evidence irrefutably shows he was acting consistent with the commission's best interests, as clearly expressed and ratified by the commissioners themselves at their many public meetings on the topic.

Similarly, he was not on "reasonable notice" that it was illegal for him to fail to suggest that the city commission hire outside counsel to handle the hearing officer/magistrate discussions and negotiations. Yes, he had suggested that the City hire outside counsel in 2012 when the *entirety* of the City's legal services were up for bid, which was prudent (though not required by any procurement law cited in this case); but that situation is far different from the *limited* procurement of terminable-at-will hearing officer/magistrate services at issue in this case. The best practice for comprehensive, full-service multi-year contracts may be that a city attorney should suggest the hiring of outside counsel to handle the procurement independently, as Robinson proposed in 2012, if the incumbent city attorney expects to bid. But nowhere is it written that a municipality must *always* hire and pay outside counsel to prepare ordinances and oversee procurement of attorney services no matter their size or scope; the cost of hiring outside counsel could easily exceed the budget

for the legal services to be procured, as would have been the case here. Plus, the commission was aware of the outside counsel option—they had just used it in 2012—and they chose to reject it along with options a dissenting commissioner wanted.

At most, a sliding scale of "best practices" exists as to what ought to be done generally when legal services are procured, particularly given the statutory protection that attorneys—like Robinson—get from ethics charges that they did business with their own agency or had conflicting employment or contractual relationships. § 112.313(16), Fla. Stat. On this point, the factual findings suggest various measures of prudence that persons in Robinson's position may wish to consider; but not a single factual finding was made, nor legal authority cited, that supports the necessary conclusion that Robinson acted with "reasonable notice" that his conduct "was inconsistent with the proper performance of h[is] public duties and would be a violation of the law or the code of ethics in part III of chapter 112." *Blackburn*, 589 So. 2d at 434.

Third, it is equally apparent that Robinson did not have the wrongful intent that section 112.313(6) requires. Tellingly, the administrative law judge made no specific factual findings as to Robinson's "wrongful intent" or whether he acted "corruptly," which must be established by clear and convincing evidence because of the momentous negative impact an ethics violation imposes on a public official's reputation and station in life. *Latham v. Florida Comm'n on Ethics*, 694 So. 2d 83, 86 (Fla. 1st DCA 1997) (requiring heightened evidentiary standard because of the punitive nature of sanctions, such that "the bearer of an officially-administered stamp of corruption, may find loss of livelihood among the least of his worries. The wake of such censure can easily sweep away business and political ambitions, station in the community, and the respect and love of family and friends."). The administrative law judge was the only person who heard the testimony and viewed the evidence (the Commission merely reviewed his proposed findings and conclusions), yet no direct factual findings were made on a critical, dispositive element of the claimed offense: corrupt intent. This omission is next to incurable because it leaves an evidentiary hole that cannot adequately be filled by mere inference or conjecture of

"corrupt intent" via the Commission's secondhand review of the paper record.

Indeed, the "factual findings of the administrative law judge, which were adopted by the Commission, contradict the conclusion that Appellant acted corruptly." *Bennett v. Comm'n on Ethics*, 871 So. 2d 924, 926 (Fla. 5th DCA 2004). The administrative law judge's findings paint a portrait of Robinson as an exceptionally skilled and trusted attorney who had acted properly for his entire time as city attorney. Aside from the hearing officer/magistrate positions, no claim is made that Robinson—a thirty-year practicing attorney, board-certified in city, county, and local government law—was anything other than exceptionally well-qualified for the comprehensive scope of complex local government services for which he was hired. The administrative law judge found, and no one disputes, that Robinson provided "exemplary legal services" to the City for almost fourteen years and was "trusted" and well-respected. He further found that Robinson believed he was representing the City's interests and did not "impede or frustrate the City Commission's move to an appointed City Attorney." To the contrary, Robinson "assisted the City in its search for an in-house City Attorney by recommending a search firm [for the new city attorney], and by speaking positively about the transition to the in-house situation." Robinson's actions can be seen as entirely consistent with the commission's overall game plan, which was to hire a new in-house city attorney with a smooth transition provided by Robinson and his firm. That Robinson offered himself for the positions is a non-starter because he was ideally suited to continue handling the limited and pressing City matters due to his superior knowledge and experience, just as he and his firm were ideally suited to bridge the transition to the in-house city attorney; all but one commissioner concurred in the need and cost effectiveness of using Robinson.

Four of the five city commissioners voted for the ordinances after a series of public meetings and discussions. They concluded that Robinson's services under the terminable-at-will, hourly positions were appropriate and necessary. The City—having used outside counsel in the 2012 procurement—could have chosen to do so here, assuming they were inclined to spend public money

for whatever marginal benefit it might produce. Instead, only one of the commissioners—who was newly elected and had become Robinson's constant critic—wanted to put off the matter and seek alternatives. The four other commissioners were sufficiently satisfied with the matter to vote for it without further ado. Who's to say they exercised less than independent judgment under the circumstances? No evidence suggests that Robinson had Svengali-like sway over the four commissioners, or that he duped or hornswoggled them. As one skeptical Ethics Commissioner queried, could it truly have been "a complete shirking of the independent functional brain capacity of those commissioners who made a decision to consider whether there could have been other alternatives and whether they really wanted to accept his offer?" Answer: No. A review of the videotapes and transcripts of the commission meetings, at which the super-majority repeatedly rejected efforts by the dissenting commissioner to delay the process or consider alternatives, makes clear they exercised independent judgment and engaged in extensive discussion and debate. To conclude that Robinson "acted corruptly under these facts, therefore, is erroneous." *Bennett*, 871 So. 2d at 926.

On this same point, it bears emphasis that Robinson's actions were on full public display at the commission's open meetings. Those videotapes show that Robinson's actions were plainly and collegially done to assist the City in its transition to an in-house city attorney and to meet a pressing need (the zoning matter) that could be met with his unquestioned and trusted legal abilities (much is made that Robinson offered his services at the "eleventh hour" but the urgency of the need was never in doubt). No claim is made that any public meeting laws were breached; all actions and statements at issue in this matter occurred in public fora and were set forth in public documents. Nothing was hidden from view; everything was done above-board; and no secretive or clandestine tactics were used. Rather than acting "corruptly" in full view of the public, Robinson's actions— as confirmed by the factual findings—reflect no wrongful intent whatsoever.

Finally, it bears noting that subsection (6) targets genuinely egregious public misconduct, not simply partisan grievances or personal disagreements with a public official. In this regard, the

21

case against Robinson has parallels to the subsection (6) violation that the Fifth District reversed in *Siplin v. Comm'n on Ethics*, 59 So. 3d 150, 152 (Fla. 5th DCA 2011), which held that "[s]ubstantial competent evidence does not support the administrative law judge's factual findings, which were adopted by the Commission, concluding that Siplin acted 'corruptly.'" The ethics charge against Siplin was that he used his official position as a state senator to "'bully' [a deputy] into letting him access the parking lot through a barricaded route." *Id.* In exonerating Siplin, the Fifth District concluded that no evidence established that he acted "corruptly," stating also that the Commission could "point[] to no law or ethics code that prohibited Siplin from asking to go through the barrier." *Id.* Likewise, the evidence here falls far short of establishing that Robinson acted "corruptly," there being no law or ethics code that prohibited Robinson from assisting the City in proposing and providing the hearing officer/magistrate services under the circumstances presented.

\* \* \*

In summary, the evidence fails to demonstrate that Robinson acted corruptly as statutorily-defined in section 112.313(6). No evidence shows that he had reasonable notice that his actions were inconsistent with his public duties or a violation of law under the circumstances. Punctuating this conclusion is that Robinson's conduct violates *none* of the other public ethics laws related to the procurement of legal services. Each of the four claims that Robinson violated ethics laws—all arising from the identical set of facts—should be dismissed, lest what can reasonably be viewed as an entirely lawful and mutually-advantageous procurement matter is transformed into a "corrupt" "misuse of power" under subsection (6).

—————————————————

Mark Herron and Robert J. Telfer of Messer Caparello, P.A., Tallahassee for Appellant.

22

Pamela Jo Bondi, Attorney General, and Elizabeth A. Miller, Assistant Attorney General, Tallahassee for Appellee.